

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

**FILED**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) |
| CLEAN CREDIT, INC., | ) |
| CHRISTOPHER PARKS, | ) |
| | ) |
| Defendants. | ) |

DEC 1 2 2012

Phil Lombardi, Clerk
U.S. DISTRICT COURT

## 12 CV - 674 GKF   TLW

## COMPLAINT FOR RECOVERY OF CIVIL MONETARY FORFEITURE PENALTY

The United States of America, through Assistant United States Attorney Phil Pinnell and on behalf of its agency, the Federal Communications Commission ("FCC"), files this action against Clean Credit, Inc. ("Clean Credit") and Christopher Parks.  In support, the United States shows the following:

### INTRODUCTION

1.    This is a civil action brought by the United States pursuant to the Communications Act of 1934, 47 U.S.C. § 504(a), to enforce a Forfeiture Order issued by the Federal Communications Commission ("FCC") on September 28, 2010, assessing a monetary forfeiture against Defendants, Clean Credit and Christopher Parks (collectively "Defendants").[1]

---

[1] The two Notices of Apparent Liability ("NAL"), see *infra* ¶¶ 17-18, 21-22, issued by the FCC to Clean Credit specifically recognized that all references to "Clean Credit" in the NALs also encompassed Defendant Christopher Parks, the president of Clean Credit, and all other principals or officers of Clean Credit. *See Clean Credit, Inc.*, 23 FCC Rcd 13866, 13866 n.2 (Enf. Bur. 2008); *Clean Credit, Inc.*, 23 FCC Rcd 18506, 185061 n.2 (2008).

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 and 47 U.S.C. § 504(a).

3.     Venue is proper in the Northern District of Oklahoma pursuant to 28 U.S.C. §§ 1355(b), 1391(b), and 1395(a) and 47 U.S.C. § 504(a), because Defendant Clean Credit operated in Tulsa, Oklahoma and Defendant Christopher Parks resides in Jenks, Oklahoma, both cities within the Northern District of Oklahoma.

## PARTIES

4.     Plaintiff is the United States of America.

5.     The FCC is an independent federal regulatory agency created by Congress to regulate intrastate, interstate, and foreign radio communications pursuant to the Communications Act of 1934, as amended ("Act"), 47 U.S.C. § 151 *et seq.*

6.     Upon information and belief, Defendant Clean Credit was an Oklahoma business operating in Tulsa that advertised unsecured lines of credit and credit repair services. Defendant Clean Credit's principal place of business was located at 5332 South Memorial Drive, Suite 100, Tulsa, Oklahoma 74145, a location within this District. Upon information and belief, Defendant Clean Credit was suspended by the Oklahoma Tax Commission on June 11, 2007.

7.     Upon information and belief, Defendant Christopher Parks is the owner and president of Clean Credit. Upon information and belief, as the president of Clean Credit, Defendant Parks managed, controlled, and directed the activities of Clean Credit. Upon information and belief, Defendant Parks is a resident of the state of Oklahoma who resides at 722 West 108 Place, Jenks, Oklahoma 74037, a location within this District.

## STATUTORY AND REGULATORY BACKGROUND

8.    Section 227 of the Act, 47 U.S.C. § 227, generally prohibits the use of telephone facsimile machines to send unsolicited advertisements.  Section 227(b)(1)(C) of the Act, 47 U.S.C. § 227(b)(1)(C), makes it unlawful for any person to use "a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." *See also* 47 C.F.R. § 64.1200(a)(3).  For this purpose, an unsolicited advertisement is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

9.    The statute provides an exception to the general prohibition against the use of telephone facsimile machines to send unsolicited advertisements when such transmissions are made in the context of an "established business relationship" between the sender and the recipient.  47 U.S.C. § 227(b)(1)(C); *see also* 47 C.F.R. § 64.1200(a)(3).

10.    Section 64.1200(f)(5) defines an "established business relationship" as "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5).

11.    Under the established business relationship exception, the facsimile telephone number to which the sender transmits a facsimile may only be obtained through a "voluntary communication . . . by the recipient directly to the sender within the context of an established business relationship" or through a "directory, advertisement, or site on the Internet to which the

recipient voluntarily agreed to make available its facsimile number for public distribution." 47 C.F.R. § 64.1200(a)(3)(ii); *see also* 47 U.S.C. § 227(b)(1)(C)(ii).

12.    Pursuant to section 503(b) of the Act, 47 U.S.C. § 503(b), any person whom the FCC determines to have willfully or repeatedly failed to comply with the provisions of Chapter 5, Title 47 of the United States Code or any rule, regulation or order issued by the FCC (including section 64.1200) shall be liable to the United States for a forfeiture penalty.

13.    Section 503(b)(5) of the Act, 47 U.S.C. § 503(b)(5), authorizes the FCC to assess a forfeiture penalty against any person who is not a common carrier so long as such person is (A) first issued a citation of the violation charged; (B) given a reasonable opportunity for a personal interview with an FCC official; and (C) subsequently engages in conduct of the type described in the citation.

14.    Section 312(f)(1) of the Act, which applies to violations for which forfeitures are assessed under section 503(b), provides that "[t]he term 'willful,' when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this Act or any rule or regulation of the Commission authorized by this Act." 47 U.S.C. § 312(f)(1). Section 312(f)(2) of the Act, which also applies to violations for which forfeitures are assessed under section 503(b), provides that "[t]he term 'repeated,' when used with reference to the commission or omission of any act, means the commission or omission of such act more than once, or, if such commission or omission is continuous, for more than one day." 47 U.S.C. § 312(f)(2).

## THE INITIAL VIOLATION AND CITATION

15.    On August 29, 2007, in response to at least one consumer complaint alleging that Defendants had transmitted an unsolicited advertisement to the complainant's facsimile machine,

the FCC Enforcement Bureau issued a citation to Defendants for violation of section 227 of the Act by using a telephone facsimile machine, computer, or other device to send an unsolicited advertisement.   Citation from Kurt A. Schroeder, Deputy Chief, Telecommunications Consumers Division, Enforcement Bureau, File No. EB-07-TC-13259 to Clean Credit, Inc., (Aug. 29, 2007) ("Citation"), attached as Exhibit A.   The Citation, which was sent by Certified Mail, return receipt requested, to the attention of Defendant Christopher Parks, informed Defendants that their transmission had violated section 227 and warned them that subsequent violations could result in the imposition of monetary forfeitures of up to $11,000 per violation.   The Citation included a copy of the consumer complaint underlying the Citation.   *Id.*   The Citation informed Defendants that within thirty (30) days of the date of the Citation, they could either request an interview with FCC staff or submit a written statement responding to the Citation.   *Id.*   Defendants did not request an interview or otherwise respond to the Citation.   *Id.*

## FIRST NOTICE OF APPARENT LIABILITY

16.    In October 2007, the FCC received complaints from three (3) different individuals alleging that Defendants collectively faxed to them during that time at least three (3) unsolicited advertisements offering unsecured lines of credit.   Defendants did not have an established business relationship with any of these complainants, nor did any complainant give Defendants permission to send the facsimile transmissions.

17.    On or about September 26, 2008, the FCC Enforcement Bureau issued a Notice of Apparent Liability for Forfeiture ("First NAL") to Defendants in the amount of $13,500.00 for the apparent willful or repeated violations of section 227 of the Act, 47 U.S.C. § 227, for transmitting at least three unsolicited advertisements to the telephone facsimile machines of at least three persons subsequent to Defendants' receipt of the Citation for such practices. *Clean Credit, Inc.*, 23

5

FCC Rcd 13866 (Enf. Bur. 2008), attached as Exhibit B. The FCC sent a copy of the First NAL to Defendant Clean Credit, with attention to Defendant Parks, by Certified Mail, return receipt requested, and by regular First Class Mail.

18. The First NAL ordered Defendants to pay the full amount of the proposed forfeiture, or to file a written statement seeking reduction or cancellation of the proposed forfeiture, within thirty (30) days of the date of the First NAL.

19. The FCC did not receive a response to the First NAL.

## SECOND NOTICE OF APPARENT LIABILITY

20. From December 2007 through April 2008, the FCC received complaints from twenty-six (26) different individuals alleging that Defendants collectively faxed to them during that time at least twenty-eight (28) unsolicited advertisements offering unsecured lines of credit. Defendants did not have an established business relationship with any of these complainants, nor did any complainant give Defendants permission to send the facsimile transmissions.

21. On or about December 19, 2008, the FCC issued another Notice of Apparent Liability for Forfeiture ("Second NAL") to Defendants in the amount of $126,000.00 for the apparent willful or repeated violations of section 227 of the Act, 47 U.S.C. § 227, for transmitting at least twenty-eight unsolicited advertisements to the telephone facsimile machines of at least twenty-six persons subsequent to Defendants' receipt of the Citation for such practices. *Clean Credit, Inc.*, 23 FCC Rcd 18506 (2008), attached as Exhibit C. The FCC sent a copy of the Second NAL to Defendant Clean Credit, with attention to Defendant Parks, by Certified Mail, return receipt requested, and by regular First Class Mail.

22.    The Second NAL ordered Defendants to pay the full amount of the proposed forfeiture, or to file a written statement seeking reduction or cancellation of the proposed forfeiture, within thirty (30) days of the date of the Second NAL.

23.    The FCC did not receive a response to the Second NAL.

## FORFEITURE ORDER

24.    On or about September 28, 2010, the FCC issued a Forfeiture Order ("Order") in the amount of $139,500.00 against Defendants for willful and repeated violations of section 227 of the Act, and related FCC rules or orders by delivering at least thirty-one (31) unsolicited advertisements to the telephone facsimile machines of at least twenty-nine (29) different consumers with whom it did not have an established business relationship. *Clean Credit, Inc.*, 25 FCC Rcd 12881 (2010), attached as Exhibit D.

25.    The FCC sent a copy of the Order to Defendant Clean Credit, with attention to Defendant Parks, by Certified Mail, return receipt requested, and by regular First Class Mail.

## DEMAND FOR PAYMENT

26.    The Order provided that if Defendant Clean Credit did not pay the forfeiture within thirty days, the case could be referred to the Department of Justice for enforcement.

27.    On or about September 16, 2011, the FCC sent Defendants a letter demanding full payment of the forfeiture within thirty days.  A copy of the September 16, 2011, letter is attached as Exhibit E.

28.    Despite due demand, Defendants have not paid the Forfeiture.

29.    A Certificate of Forfeiture is attached as Exhibit F.

**CLAIM FOR RELIEF**

30.   Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 29 above.

31.   Defendants willfully and repeatedly violated section 227 of the Act, 47 U.S.C. § 227, and related rules and orders by delivering at least thirty-one unsolicited advertisements to the telephone facsimile machines of at least twenty-nine individuals after having been issued a Citation apprising them that Defendants had violated Section 227 of the Act for the same type of conduct.

32.   The FCC properly entered a Forfeiture Order on September 28, 2010, pursuant to 47 U.S.C. § 503(b), in which it asserted a total forfeiture penalty in the amount of $139,500.00 against Defendants for their violations of 47 U.S.C. § 227, representing the $13,500.00 and $126,000.00 forfeitures proposed on September 26, 2008, and December 19, 2008, respectively.

33.   By reason of the foregoing, Defendants are liable to the United States for a forfeiture penalty pursuant to 47 U.S.C. § 503(b), section 1.80 of the Commission's Rules ("Rules"), 47 C.F.R. § 1.80, and the Commission's *Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines*, 12 FCC Rcd 17087 (1997), *recon. denied*, 15 FCC Rcd 303 (1999).

34.   The United States only seeks to enforce the $126,000.00 forfeiture proposed in the Second NAL on December 19, 2008 and, subsequently, issued in the Forfeiture Order.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly or severally, as follows:

a.     Judgment in the amount of $126,000.00;

b.     Interest from the date of judgment at the legal rate in effect on the date of judgment, pursuant to 28 U.S.C. § 1961.

8

c.      Costs and disbursements incurred by Plaintiff in this action; and

d.      Such other further relief that the Court may deem just and proper.

DATE: December 12, 2012                    Respectfully submitted,

                                           DANNY C. WILLIAMS, Sr.
                                           United States Attorney

                               By:

                                           Phil Pinnell
                                           Assistant United States Attorney
                                           Oklahoma Bar No. 7169
                                           110 W. 7th St.
                                           Suite 300
                                           Tulsa, Oklahoma 74119
                                           Telephone: (918) 382-2716
                                           Facsimile:  (918) 560-7938
                                           Email:phil.pinnell@usdoj.gov

Federal Communications Commission                    DA 07-3709



**FEDERAL COMMUNICATIONS COMMISSION**
**WASHINGTON, D.C. 20554**

August 29, 2007

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Clean Credit Inc.
Attn: Christopher Parks
5332 S Memorial Dr
Tulsa, Ok  74145

RE: EB-07-TC-13259

Dear Mr. Parks:

  This is an official **CITATION**, issued pursuant to section 503(b)(5) of the Communications Act of 1934, as amended (the Act), 47 U.S.C. § 503(b)(5), for violations of the Act and the Federal Communications Commission's rules that govern telephone solicitations and unsolicited advertisements.[1]  As explained below, future violations of the Act or Commission's rules in this regard may subject you and your company to monetary forfeitures.

  It has come to our attention that your company, acting under your direction, apparently sent one or more unsolicited advertisements to telephone facsimile machines in violation of Section 227(b)(1)(C) of the Communications Act, as described in the attached complaint(s).[2] Section 227(b)(1)(C) makes it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a  telephone facsimile machine."[3]  As relevant here, an "unsolicited advertisement" is "any material

---

[1] 47 U.S.C. § 227; 47 C.F.R. § 64.1200.  A copy of these provisions is enclosed for your convenience.  Section 227 was added to the Communications Act by the Telephone Consumer Protection Act of 1991 and is most commonly known as the TCPA. The TCPA and the Commission's parallel rules restrict a variety of practices that are associated with telephone solicitation and use of the telephone network to deliver unsolicited advertisements, including fax advertising.  We refer in this citation to the Commission's rules as they existed at the time of the violations in this matter.  Revised rules in this area took effect on August 1, 2006.  47 U.S.C. § 64.1200(a)(3); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 – Junk Fax Protection Act of 2005*, Report and Order and Third Order on Reconsideration, 21 FCC Rcd 3787 (2006) (*2006 TCPA Report and Order*).

[2] We have attached 1 complaint at issue in this citation.  The complaint address a facsimile advertisement that contains the telephone number 918-830-1090, which your business utilized during the time period at issue.

[3] 47 U.S.C. § 227(b)(1)(C); *see also* 47 C.F.R. § 64.1200(a)(3) (providing that no person or entity may . . . use a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine).  Both the TCPA and the Commission~~~imile machine" as "equipment which

PLAINTIFF'S
EXHIBIT

A

**Federal Communications Commission**                     DA 07-3709

advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission."[4]  Under Commission rules and orders in effect during the relevant period here, the Commission considered an established business relationship between a fax sender and recipient to constitute prior express invitation or permission to send a facsimile advertisement.[5]  Mere distribution or publication of a fax number, however, does not establish consent to receive advertisements by fax.[6]

**If, after receipt of this citation, you or your company violate the Communications Act or the Commission's rules in any manner described herein, the Commission may impose monetary forfeitures not to exceed $11,000 for each such violation or each day of a continuing violation.**

You may respond to this citation within 30 days from the date of this letter either through (1) a personal interview at the Commission's Field Office nearest to your place of business, (2) a written statement, or (3) a teleconference interview with the Commission's Telecommunications Consumers Division in Washington, DC.  Your response should specify the actions that you are taking to ensure that you do not violate the Commission's rules governing telephone solicitation and unsolicited advertisements, as described above.

**Please contact Delores Browder at (202) 418-2861 to arrange for an interview at the closest field office, if you wish to schedule a personal interview.  You should schedule any interview to take place within 30 days of the date of this letter.  You should send any written statement within 30 days of the date of this letter to:**

> Kurt A. Schroeder
> Deputy Chief

---

has the capacity to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(2); 47 C.F.R. § 64.1200(f)(8).  The Commission has stated that "[t]he TCPA's definition of 'telephone facsimile machine' broadly applies to any equipment that has the capacity to send or receive text or images."  Thus, "faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes. . . [although] the prohibition does not extend to facsimile messages sent as email over the Internet." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd 14014, 14131-32 (2003) (*2003 TCPA Report and Order*).

[4] 47 U.S.C. § 227(a)(4) (1991); 47 C.F.R. § 64.1200(f)(10) (2003); *see* 47 U.S.C. § 227 (a)(4) (2005); 47 C.F.R. § 64.1200(f)(13) (2006) (amending the definition of "unsolicited advertisement" to specify that prior express invitation or permission may be "in writing or otherwise").

[5] *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12405 (1995) (*1995 TCPA Reconsideration Order*).  The Junk Fax Prevention Act of 2005, Pub. L. 109-21, 119 Stat. 359 (2005), and the Commission's parallel rules, which took effect August 1, 2006, further specify the conditions under which an established business relationship provides an exception to the prohibition on unsolicited fax advertising.

[6] *1995 Reconsideration Order*, 10 FCC Rcd at 12408-09; *see also 2003 TCPA Report and Order*, 18 FCC Rcd at 14128 (concluding that mere publication of a fax number in a trade publication or directory does not demonstrate consent to receive fax advertising).

Federal Communications Commission                    DA 07-3709

Telecommunications Consumers Division
Enforcement Bureau
Federal Communications Commission
445-12th Street, S.W., Rm. 4-C222
Washington, D.C. 20554

**Reference EB-07-TC-13259 when corresponding with the Commission.**

Reasonable accommodations for people with disabilities are available upon request.
Include a description of the accommodation you will need including as much detail as you can.
Also include a way we can contact you if we need more information. Please allow at least 5 days
advance notice; last minute requests will be accepted, but may be impossible to fill. Send an e-
mail to fcc504@fcc.gov or call the Consumer & Governmental Affairs Bureau:

For sign language interpreters, CART, and other reasonable accommodations:
202-418-0530 (voice), 202-418-0432 (tty);

For accessible format materials (braille, large print, electronic files, and audio
format): 202-418-0531 (voice), 202-418-7365 (tty).

Under the Privacy Act of 1974, 5 U.S.C. § 552(a)(e)(3), we are informing you that the
Commission's staff will use all relevant material information before it, including information
that you disclose in your interview or written statement, to determine what, if any, enforcement
action is required to ensure your compliance with the Communications Act and the
Commission's rules.

The knowing and willful making of any false statement, or the concealment of any
material fact, in reply to this citation is punishable by fine or imprisonment under 18 U.S.C. §
1001.

Thank you in advance for your anticipated cooperation.

Sincerely,

Kurt A. Schroeder
Deputy Chief, Telecommunications Consumers Division
Enforcement Bureau
Federal Communications Commission

Enclosures

3

Before the
**Federal Communications Commission**
Washington, D.C. 20554

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Clean Credit, Inc. | ) | File No. EB-07-TC-13259 |
| | ) | |
| Apparent Liability for Forfeiture | ) | NAL/Acct No. 200832170077 |
| | ) | |
| | ) | FRN: 0018140178 |
| | ) | |
| | ) | |

## NOTICE OF APPARENT LIABILITY FOR FORFEITURE

**Adopted: September 24, 2008**                    **Released:  September 26, 2008**

By the Chief, Enforcement Bureau:

## I.    INTRODUCTION

1.      In this *Notice of Apparent Liability for Forfeiture* ("NAL")[1], we find that Clean Credit, Inc.[2] ("Clean Credit") apparently willfully or repeatedly violated section 227 of the Communications Act of 1934, as amended ("Act"), and the Commission's related rules and orders, by delivering at least three unsolicited advertisements to the telephone facsimile machines of at least three consumers.[3]  Based on the facts and circumstances surrounding these apparent violations, we find that Clean Credit is apparently liable for a forfeiture in the amount of $13,500.

---

[1] *See* 47 U.S.C. § 503(b)(1).  The Commission has the authority under this section of the Act to assess a forfeiture against any person who has "willfully or repeatedly failed to comply with any of the provisions of this Act or of any rule, regulation, or order issued by the Commission under this Act ...." *See also* 47 U.S.C. § 503(b)(5) (stating that the Commission has the authority under this section of the Act to assess a forfeiture penalty against any person who does not hold a license, permit, certificate or other authorization issued by the Commission or an applicant for any of those listed instrumentalities so long as such person (A) is first issued a citation of the violation charged; (B) is given a reasonable opportunity for a personal interview with an official of the Commission, at the field office of the Commission nearest to the person's place of residence; and (C) subsequently engages in conduct of the type described in the citation).

[2] Clean Credit has offices at 5332 S. Memorial Drive, Suite 100, Tulsa, OK 74145.  Christopher Parks is listed as the President of Clean Credit as well as the Registered Agent.  Amos Baker is listed as the contact person for Clean Credit.  Accordingly, all references in this NAL to "Clean Credit" also encompass the foregoing individuals and all other principals and officers of this entity, as well as the corporate entity itself.

[3] *See* 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(3); *see also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order and Third Order on Reconsideration,* 21 FCC Rcd 3787 (2006).



## II.     BACKGROUND

2.      Section 227(b)(1)(C) of the Act makes it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement."[4]  The term "unsolicited advertisement" is defined in the Act and the Commission's rules as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission in writing or otherwise."[5]  Under the Commission's rules, an "established business relationship"[6] exception permits a party to deliver a message to a consumer if the sender has an established business relationship with the recipient *and* the sender obtained the number of the facsimile machine through the voluntary communication by the recipient, directly to the sender, within the context of the established business relationship, or through a directory, advertisement, or a site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution.[7]

3.      On August 29, 2007, in response to one or more consumer complaints alleging that Clean Credit had faxed unsolicited advertisements, the Enforcement Bureau ("Bureau") issued a citation[8] to Clean Credit, pursuant to section 503(b)(5) of the Act.[9]  The Bureau cited Clean Credit for using a telephone facsimile machine, computer, or other device, to send unsolicited advertisements for unsecured lines of credit to a telephone facsimile machine, in violation of section 227 of the Act and the Commission's related rules and orders.  The citation warned Clean Credit that subsequent violations could result in the imposition of monetary forfeitures of up to $11,000 per violation, and included a copy of the consumer complaints that formed the basis of the citation.[10]  The citation informed Clean Credit that within thirty (30) days of the date of the citation, it could either request an interview with Commission staff, or could provide a written statement responding to the citation.  Clean Credit did not request an interview or otherwise respond to the citation.

4.      Despite the citation's warning that subsequent violations could result in the imposition of monetary forfeitures, we have received additional consumer complaints indicating that Clean Credit continued to engage in such conduct after issuance of the citation.[11]  We base our action here specifically

---

[4] 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(3).

[5] 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(13).

[6] An "established business relationship" is defined as a prior or existing relationship formed by a voluntary two-way communication "with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party." 47 C.F.R.  § 64.1200(f)(5).

[7] *See* 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64(a)(3)(i), (ii).

[8] Citation from Kurt A. Schroeder, Deputy Chief, Telecommunications Consumers Division, Enforcement Bureau, File No.EB-07-TC-13259, issued to Clean Credit on August 29, 2007.

[9] *See* 47 U.S.C. § 503(b)(5) (authorizing the Commission to issue citations to persons who do not hold a license, permit, certificate or other authorization issued by the Commission or an applicant for any of those listed instrumentalities for violations of the Act or of the Commission's rules and orders).

[10] Bureau staff mailed the citation to the following address: Clean Credit, Inc., Attn: Christopher Parks, 5332 S. Memorial Drive, #100, Tulsa, OK 74145.  *See* n.2, *supra*.

[11] *See* Appendix for a listing of the consumer complaints against Clean Credit requesting Commission action.

on three complaints filed by three consumers establishing that Clean Credit continued to send unsolicited advertisements to telephone facsimile machines after the date of the citation.[12]

5.      Section 503(b) of the Act authorizes the Commission to assess a forfeiture for each violation of the Act or of any rule, regulation, or order issued by the Commission under the Act by a non-common carrier or other entity not specifically designated in section 503 of the Act.  The maximum penalty for such a violation is $11,000 for a violation occurring before September 2, 2008, and $16,000 for a violation occurring on or after September 2, 2008.[13]  In exercising such authority, we are to take into account "the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require."[14]

## III.    DISCUSSION

### A.      Violations of the Commission's Rules Restricting Unsolicited Facsimile Advertisements

6.      We find that Clean Credit apparently violated section 227 of the Act and the Commission's related rules and orders by using a telephone facsimile machine, computer, or other device to send at least three unsolicited advertisements to the consumers identified in the Appendix.  This NAL is based on evidence that the consumers received unsolicited fax advertisements from Clean Credit *after* the Commission's citation.  The facsimile transmission advertised unsecured lines of credit.  Further, according to the complaints, the consumers neither had an established business relationship with Clean Credit nor gave Clean Credit permission to send the facsimile transmissions.[15]  The faxes at issue here therefore fall within the definition of an "unsolicited advertisement."[16]  Based on the entire record, including the three consumer complaints, we conclude that Clean Credit apparently violated section 227 of the Act and the Commission's related rules and orders by sending three unsolicited advertisements to three consumers' facsimile machines.

---

[12] We note that evidence of additional instances of unlawful conduct by Clean Credit may form the basis of subsequent enforcement action.

[13] Section 503(b)(2)(C) provides for forfeitures up to $10,000 for each violation in cases not covered by subparagraph (A) or (B), which address forfeitures for violations by licensees and common carriers, among others.  *See* 47 U.S.C. § 503(b).  In accordance with the inflation adjustment requirements contained in the Debt Collection Improvement Act of 1996, Pub. L. 104-134, Sec. 31001, 110 Stat. 1321, the Commission implemented an increase of the maximum statutory forfeiture under section 503(b)(2)(C) first to $11,000 and more recently to $16,000.  *See* 47 C.F.R. §1.80(b)(3); *Amendment of Section 1.80 of the Commission's Rules and Adjustment of Forfeiture Maxima to Reflect Inflation*, 15 FCC Rcd 18221 (2000) (forfeiture maximum for this type of violator set at $11,000); *Amendment of Section 1.80(b) of the Commission's Rules and Adjustment of Forfeiture Maxima to Reflect Inflation*, 19 FCC Rcd 10945 (2004) (amendment of section 1.80(b) to reflect inflation left the forfeiture maximum for this type of violator at $11,000); *Amendment of Section 1.80(b) of the Commission's Rules, Adjustment of Forfeiture Maxima to Reflect Inflation*, 23 FCC Rcd 9845 (2008) (amendment of section 1.80(b) to reflect inflation increased the forfeiture maximum for this type of violator at $16,000).

[14] 47 U.S.C. § 503(b)(2)(D); *The Commission's Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines, Report and Order*, 12 FCC Rcd 17087, 17100-01 para. 27 (1997) (*Forfeiture Policy Statement*), *recon. denied*, 15 FCC Rcd 303 (1999).

[15] *See, e.g.*, complaint dated October 2, 2007, from Trevor Marvin (stating that he has never done business with the fax advertiser, never made an inquiry or application to the fax advertiser and never given permission for the fax advertiser to fax an advertisement to him).  The complainants involved in this action are listed in the Appendix.

[16] *See* 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(13) (definition previously at § 64.1200(f)(10)).

**B.      Proposed Forfeiture**

7.      We find that Clean Credit is apparently liable for a forfeiture in the amount of $13,500. Although the *Commission's Forfeiture Policy Statement* does not establish a base forfeiture amount for violating the prohibition against using a telephone facsimile machine to send unsolicited advertisements, the Commission has previously considered $4,500 per unsolicited fax advertisement to be an appropriate base amount.[17]  We apply that base amount to the three apparent violations.  Thus, a total forfeiture of $13,500 is proposed.  Clean Credit will have the opportunity to submit evidence and arguments in response to this NAL to show that no forfeiture should be imposed or that some lesser amount should be assessed.[18]

## IV.      CONCLUSION AND ORDERING CLAUSES

8.      We have determined that Clean Credit, Inc. apparently violated section 227 of the Act and the Commission's related rules and orders by using a telephone facsimile machine, computer, or other device to send at least three unsolicited advertisements to the three consumers identified in the Appendix. We have further determined that Clean Credit, Inc. is apparently liable for a forfeiture in the amount of $13,500.

9.      Accordingly, IT IS ORDERED, pursuant to section 503(b) of the Act, 47 U.S.C. § 503(b), and section 1.80 of the rules, 47 C.F.R. § 1.80,  and under the authority delegated by sections 0.111 and 0.311 of the Commission's rules, 47 C.F.R. §§ 0.111, 0.311, that Clean Credit, Inc. is hereby NOTIFIED of this APPARENT LIABILITY FOR A FORFEITURE in the amount of $13,500 for willful or repeated violations of section 227(b)(1)(C) of the Communications Act, 47 U.S.C. § 227(b)(1)(C), sections 64.1200(a)(3) of the Commission's rules, 47 C.F.R. § 64.1200(a)(3), and the related orders described in the paragraphs above.

10.      IT IS FURTHER ORDERED THAT, pursuant to section 1.80 of the Commission's rules,[19] within thirty (30) days of the release date of this *Notice of Apparent Liability for Forfeiture*, Clean Credit, Inc. SHALL PAY the full amount of the proposed forfeiture or SHALL FILE a written statement seeking reduction or cancellation of the proposed forfeiture.

11.      Payment of the forfeiture must be made by check or similar instrument, payable to the order of the Federal Communications Commission.  The payment must include the NAL/Account Number and FRN Number referenced above.  Payment by check or money order may be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000.  Payment by overnight mail may be sent to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101.  Payment by wire transfer may be made to ABA Number 021030004, receiving bank TREAS/NYC, and account number 27000001.  For payment by credit card, an FCC Form 159 (Remittance Advice) must be submitted.  When completing the FCC Form 159, enter the NAL/Account number in block number 23A (call sign/other ID), and enter the letters "FORF" in block number 24A (payment type code).  Clean Credit, Inc. will also send electronic notification on the

---

[17] *See Get-Aways, Inc.*, Notice of Apparent Liability For Forfeiture, 15 FCC Rcd 1805 (1999); *Get-Aways, Inc.*, Forfeiture Order, 15 FCC Rcd 4843 (2000); *see also US Notary, Inc.*, Notice of Apparent Liability for Forfeiture, 15 Rcd 16999 (2000); *US Notary, Inc.*, Forfeiture Order, 16 FCC Rcd 18398 (2001); *Tri-Star Marketing, Inc.*, Notice of Apparent Liability For Forfeiture, 15 FCC Rcd 11295 (2000); *Tri-Star Marketing, Inc.*, Forfeiture Order, 15 FCC Rcd 23198 (2000).

[18] *See* 47 U.S.C. § 503(b)(4)(C); 47 C.F.R. § 1.80(f)(3).

[19] 47 C.F.R. § 1.80.

**Federal Communications Commission**                     **DA 08-2142**

date said payment is made to Johnny.drake@fcc.gov. Requests for full payment under an installment plan should be sent to: Chief Financial Officer -- Financial Operations, 445 12th Street, S.W., Room 1-A625, Washington, D.C. 20554. Please contact the Financial Operations Group Help Desk at 1-877-480-3201 or Email: ARINQUIRIES@fcc.gov with any questions regarding payment procedures.

12.     The response, if any, must be mailed both to the Office of the Secretary, Federal Communications Commission, 445 12th Street, SW, Washington, DC 20554, ATTN: Enforcement Bureau – Telecommunications Consumers Division, and to Colleen Heitkamp, Chief, Telecommunications Consumers Division, Enforcement Bureau, Federal Communications Commission, 445 12th Street, SW, Washington, DC 20554, and must include the NAL/Acct. No. referenced in the caption.

13.     The Commission will not consider reducing or canceling a forfeiture in response to a claim of inability to pay unless the petitioner submits: (1) federal tax returns for the most recent three-year period; (2) financial statements prepared according to generally accepted accounting practices; or (3) some other reliable and objective documentation that accurately reflects the petitioner's current financial status. Any claim of inability to pay must specifically identify the basis for the claim by reference to the financial documentation submitted.

14.     IT IS FURTHER ORDERED that a copy of this *Notice of Apparent Liability for Forfeiture* shall be sent by Certified Mail Return Receipt Requested and First Class Mail to Clean Credit, Inc., Attention: Christopher Parks, President, Amos Baker, Contact, 5332 S. Memorial Drive, Suite 100, Tulsa, OK 74145.

FEDERAL COMMUNICATIONS COMMISSION

Kris Anne Monteith
Chief, Enforcement Bureau

**Federal Communications Commission**        DA 08-2142

**APPENDIX**

**Complainants and Violation Dates**

| Complainant received facsimile solicitations | Violation Date(s) |
|---|---|
| Trevor Marvin | 10/2/07 |
| Brent Swenson | 10/6/07 |
| Matthew Zeidman | 10/25/07 |
| | |

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Clean Credit, Inc. | ) | File No. EB-07-TC-13259 |
| | ) | |
| Apparent Liability for Forfeiture | ) | NAL/Acct No. 20093217009 |
| | ) | |
| | ) | FRN: 0018140178 |

**NOTICE OF APPARENT LIABILITY FOR FORFEITURE**

Adopted: **December 19, 2008**                    Released:  **December 19, 2008**

By the Commission:

## I.     INTRODUCTION

1.      In this *Notice of Apparent Liability for Forfeiture* ("NAL")[1], we find that Clean Credit, Inc.[2] ("Clean Credit") apparently willfully or repeatedly violated section 227 of the Communications Act of 1934, as amended ("Act"), and the Commission's related rules and orders, by delivering at least twenty-eight unsolicited advertisements to the telephone facsimile machines of at least twenty-six consumers.[3]  Based on the facts and circumstances surrounding these apparent violations, we find that Clean Credit is apparently liable for a forfeiture in the amount of $126,000.

## II.     BACKGROUND

2.      Section 227(b)(1)(C) of the Act makes it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an

---

[1] *See* 47 U.S.C. § 503(b)(1).  The Commission has the authority under this section of the Act to assess a forfeiture against any person who has "willfully or repeatedly failed to comply with any of the provisions of this Act or of any rule, regulation, or order issued by the Commission under this Act ...." *See also* 47 U.S.C. § 503(b)(5) (stating that the Commission has the authority under this section of the Act to assess a forfeiture penalty against any person who does not hold a license, permit, certificate or other authorization issued by the Commission or an applicant for any of those listed instrumentalities so long as such person (A) is first issued a citation of the violation charged; (B) is given a reasonable opportunity for a personal interview with an official of the Commission, at the field office of the Commission nearest to the person's place of residence; and (C) subsequently engages in conduct of the type described in the citation).

[2] Clean Credit has offices at 5332 S. Memorial Drive, Suite 100, Tulsa, OK 74145.  Christopher Parks is listed as the President of Clean Credit as well as the Registered Agent.  Amos Baker is listed as the contact person for Clean Credit.  Accordingly, all references in this NAL to "Clean Credit" also encompass the foregoing individuals and all other principals and officers of this entity, as well as the corporate entity itself.

[3] *See* 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(3); *see also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order and Third Order on Reconsideration,* 21 FCC Rcd 3787 (2006).



**PLAINTIFF'S EXHIBIT**

C

unsolicited advertisement."[4]  The term "unsolicited advertisement" is defined in the Act and the Commission's rules as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission in writing or otherwise."[5]  Under the Commission's rules, an "established business relationship"[6] exception permits a party to deliver a message to a consumer if the sender has an established business relationship with the recipient *and* the sender obtained the number of the facsimile machine through the voluntary communication by the recipient, directly to the sender, within the context of the established business relationship, or through a directory, advertisement, or a site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution.[7]

3.       On August 29, 2007, in response to one or more consumer complaints alleging that Clean Credit had faxed unsolicited advertisements, the Enforcement Bureau ("Bureau") issued a citation[8] to Clean Credit, pursuant to section 503(b)(5) of the Act.[9]  The Bureau cited Clean Credit for using a telephone facsimile machine, computer, or other device, to send unsolicited advertisements for unsecured lines of credit to a telephone facsimile machine, in violation of section 227 of the Act and the Commission's related rules and orders.  The citation warned Clean Credit that subsequent violations could result in the imposition of monetary forfeitures of up to $11,000 per violation, and included a copy of the consumer complaints that formed the basis of the citation.[10]  The citation informed Clean Credit that within thirty (30) days of the date of the citation, it could either request an interview with Commission staff, or could provide a written statement responding to the citation.  Clean Credit did not request an interview or otherwise respond to the citation.[11]

4.       Despite the citation's warning that subsequent violations could result in the imposition of monetary forfeitures, we have received additional consumer complaints indicating that Clean Credit continued to engage in such conduct after issuance of the citation.[12]  We base our action here specifically

---

[4] 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(3).

[5] 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(13).

[6] An "established business relationship" is defined as a prior or existing relationship formed by a voluntary two-way communication "with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party." 47 C.F.R.  § 64.1200(f)(5).

[7] *See* 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64(a)(3)(i), (ii).

[8] Citation from Kurt A. Schroeder, Deputy Chief, Telecommunications Consumers Division, Enforcement Bureau, File No.EB-07-TC-13259, issued to Clean Credit on August 29, 2007.

[9] *See* 47 U.S.C. § 503(b)(5) (authorizing the Commission to issue citations to persons who do not hold a license, permit, certificate or other authorization issued by the Commission or an applicant for any of those listed instrumentalities for violations of the Act or of the Commission's rules and orders).

[10] Bureau staff mailed the citation to the following address: Clean Credit, Inc., Attn: Christopher Parks, 5332 S. Memorial Drive, #100, Tulsa, OK 74145.  *See* n.2, *supra.*

[11] Following the issuance of the citation, the Commission continued to receive complaints from consumers alleging that Clean Credit faxed unsolicited advertisements to them.  These violations, occurring after the Commission's citation, resulted in the issuance of a Notice of Apparent Liability for Forfeiture against Clean Credit on September 26, 2008, in the amount of $13,500.  *Clean Credit, Inc.*, Notice of Apparent Liability for Forfeiture, DA 08-2142 (Enf. Bur. September 26, 2008).

[12] *See* Appendix for a listing of the consumer complaints against Clean Credit requesting Commission action.

**Federal Communications Commission**                                      **FCC 08-274**

on complaints filed by twenty-six consumers establishing that Clean Credit continued to send unsolicited advertisements to telephone facsimile machines after the date of the citation.[13]

     5.    Section 503(b) of the Act authorizes the Commission to assess a forfeiture for each violation of the Act or of any rule, regulation, or order issued by the Commission under the Act by a non-common carrier or other entity not specifically designated in section 503 of the Act. The maximum penalty for such a violation is $11,000 for a violation occurring before September 2, 2008, and $16,000 for a violation occurring on or after September 2, 2008.[14] In exercising such authority, we are to take into account "the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require."[15]

## III.   DISCUSSION

### A.   Violations of the Commission's Rules Restricting Unsolicited Facsimile Advertisements

     6.    We find that Clean Credit apparently violated section 227 of the Act and the Commission's related rules and orders by using a telephone facsimile machine, computer, or other device to send at least twenty-eight unsolicited advertisements to the consumers identified in the Appendix. This NAL is based on evidence that the consumers received unsolicited fax advertisements from Clean Credit *after* the Commission's citation. The facsimile transmission advertised unsecured lines of credit. Further, according to the complaints, the consumers neither had an established business relationship with Clean Credit nor gave Clean Credit permission to send the facsimile transmissions.[16] The faxes at issue here therefore fall within the definition of an "unsolicited advertisement."[17] Based on the entire record, including the twenty-six consumer complaints, we conclude that Clean Credit apparently violated section 227 of the Act and the Commission's related rules and orders by sending twenty-eight unsolicited advertisements to twenty-six consumers' facsimile machines.

---

[13] We note that evidence of additional instances of unlawful conduct by Clean Credit may form the basis of subsequent enforcement action.

[14] Section 503(b)(2)(C) provides for forfeitures up to $10,000 for each violation in cases not covered by subparagraph (A) or (B), which address forfeitures for violations by licensees and common carriers, among others. *See* 47 U.S.C. § 503(b). In accordance with the inflation adjustment requirements contained in the Debt Collection Improvement Act of 1996, Pub. L. 104-134, Sec. 31001, 110 Stat. 1321, the Commission implemented an increase of the maximum statutory forfeiture under section 503(b)(2)(C) first to $11,000 and more recently to $16,000. *See* 47 C.F.R. §1.80(b)(3); *Amendment of Section 1.80 of the Commission's Rules and Adjustment of Forfeiture Maxima to Reflect Inflation*, 15 FCC Rcd 18221 (2000) (forfeiture maximum for this type of violator set at $11,000); *Amendment of Section 1.80(b) of the Commission's Rules and Adjustment of Forfeiture Maxima to Reflect Inflation*, 19 FCC Rcd 10945 (2004) (amendment of section 1.80(b) to reflect inflation left the forfeiture maximum for this type of violator at $11,000); *Amendment of Section 1.80(b) of the Commission's Rules, Adjustment of Forfeiture Maxima to Reflect Inflation*, 23 FCC Rcd 9845 (2008) (amendment of section 1.80(b) to reflect inflation increased the forfeiture maximum for this type of violator at $16,000).

[15] 47 U.S.C. § 503(b)(2)(D); *The Commission's Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines, Report and Order*, 12 FCC Rcd 17087, 17100-01 para. 27 (1997) (*Forfeiture Policy Statement*), *recon. denied*, 15 FCC Rcd 303 (1999).

[16] *See, e.g.*, complaint dated January 7, 2008, from Rick Austin (stating that he has never done business with the fax advertiser, never made an inquiry or application to the fax advertiser and never given permission for the fax advertiser to fax an advertisement to him). The complainants involved in this action are listed in the Appendix.

[17] *See* 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(13) (definition previously at § 64.1200(f)(10)).

### B.     Proposed Forfeiture

7.     We find that Clean Credit is apparently liable for a forfeiture in the amount of $126,000. Although the *Commission's Forfeiture Policy Statement* does not establish a base forfeiture amount for violating the prohibition against using a telephone facsimile machine to send unsolicited advertisements, the Commission has previously considered $4,500 per unsolicited fax advertisement to be an appropriate base amount.[18] We apply that base amount to the twenty-eight apparent violations. Thus, a total forfeiture of $126,000 is proposed. Clean Credit will have the opportunity to submit evidence and arguments in response to this NAL to show that no forfeiture should be imposed or that some lesser amount should be assessed.[19]

## IV.     CONCLUSION AND ORDERING CLAUSES

8.     We have determined that Clean Credit, Inc. apparently violated section 227 of the Act and the Commission's related rules and orders by using a telephone facsimile machine, computer, or other device to send at least twenty-eight unsolicited advertisements to the twenty-six consumers identified in the Appendix. We have further determined that Clean Credit, Inc. is apparently liable for a forfeiture in the amount of $126,000.

9.     Accordingly, IT IS ORDERED, pursuant to section 503(b) of the Act, 47 U.S.C. § 503(b), and section 1.80 of the rules, 47 C.F.R. § 1.80, that Clean Credit, Inc. is hereby NOTIFIED of this APPARENT LIABILITY FOR A FORFEITURE in the amount of $126,000 for willful or repeated violations of section 227(b)(1)(C) of the Communications Act, 47 U.S.C. § 227(b)(1)(C), sections 64.1200(a)(3) of the Commission's rules, 47 C.F.R. § 64.1200(a)(3), and the related orders described in the paragraphs above.

10.     IT IS FURTHER ORDERED THAT, pursuant to section 1.80 of the Commission's rules,[20] within thirty (30) days of the release date of this *Notice of Apparent Liability for Forfeiture*, Clean Credit, Inc. SHALL PAY the full amount of the proposed forfeiture or SHALL FILE a written statement seeking reduction or cancellation of the proposed forfeiture.

11.     Payment of the forfeiture must be made by check or similar instrument, payable to the order of the Federal Communications Commission. The payment must include the NAL/Account Number and FRN Number referenced above. Payment by check or money order may be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000. Payment by overnight mail may be sent to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101. Payment by wire transfer may be made to ABA Number 021030004, receiving bank TREAS/NYC, and account number 27000001. For payment by credit card, an FCC Form 159 (Remittance Advice) must be submitted. When completing the FCC Form 159, enter the NAL/Account number in block number 23A (call sign/other ID), and enter the letters "FORF" in block number 24A (payment type code). Clean Credit, Inc. will also send electronic notification on the date said payment is made to Johnny.drake@fcc.gov. Requests for full payment under an installment plan should be sent to: Chief Financial Officer -- Financial Operations, 445 12th Street, S.W., Room 1-

---

[18] *See Get-Aways, Inc.*, Notice of Apparent Liability For Forfeiture, 15 FCC Rcd 1805 (1999); *Get-Aways, Inc.*, Forfeiture Order, 15 FCC Rcd 4843 (2000); *see also US Notary, Inc.*, Notice of Apparent Liability for Forfeiture, 15 Rcd 16999 (2000*); US Notary, Inc.*, Forfeiture Order, 16 FCC Rcd 18398 (2001*); Tri-Star Marketing, Inc.*, Notice of Apparent Liability For Forfeiture, 15 FCC Rcd 11295 (2000); *Tri-Star Marketing, Inc.*, Forfeiture Order, 15 FCC Rcd 23198 (2000).

[19] *See* 47 U.S.C. § 503(b)(4)(C); 47 C.F.R. § 1.80(f)(3).

[20] 47 C.F.R. § 1.80.

4

A625, Washington, D.C. 20554.   Please contact the Financial Operations Group Help Desk at 1-877-480-3201 or Email: ARINQUIRIES@fcc.gov with any questions regarding payment procedures.

12.     The response, if any, must be mailed both to the Office of the Secretary, Federal Communications Commission, 445 12th Street, SW, Washington, DC 20554, ATTN:  Enforcement Bureau – Telecommunications Consumers Division, and to Colleen Heitkamp, Chief, Telecommunications Consumers Division, Enforcement Bureau, Federal Communications Commission, 445 12th Street, SW, Washington, DC 20554, and must include the NAL/Acct. No. referenced in the caption.

13.     The Commission will not consider reducing or canceling a forfeiture in response to a claim of inability to pay unless the petitioner submits: (1) federal tax returns for the most recent three-year period; (2) financial statements prepared according to generally accepted accounting practices; or (3) some other reliable and objective documentation that accurately reflects the petitioner's current financial status.  Any claim of inability to pay must specifically identify the basis for the claim by reference to the financial documentation submitted.

14.     IT IS FURTHER ORDERED that a copy of this *Notice of Apparent Liability for Forfeiture* shall be sent by Certified Mail Return Receipt Requested and First Class Mail to Clean Credit, Inc., Attention: Christopher Parks, President, Amos Baker, Contact, 5332 S. Memorial Drive, Suite 100, Tulsa, OK 74145.

FEDERAL COMMUNICATIONS COMMISSION


Marlene H. Dortch
Secretary

**APPENDIX**

**Complainants and Violation Dates**

| Complainant received facsimile solicitations | Violation Date(s) |
| --- | --- |
| Gerri Andreas | 12/21/07 |
| Rick Austin | 1/7/08 |
| Patrick Burns | 12/24/07 |
| Luis Cuevas | 1/9/08 |
| Karen Dooney | 3/24/08 |
| Jan Driessnack | 1/28/08 |
| Ann Eder | 1/29/08, 3/11/08 |
| Anne Flanagan | 1/27/08, 2/27/08 |
| Donna Flaten | 1/10/08 |
| Mary Frank | 2/2/08 |
| Scott Hillabrand | 12/28/07 |
| Trevor Marvin | 1/29/08 |
| Ken Meyer | 1/21/08 |
| James Michalik | 1/14/08 |
| John Miller | 1/10/08 |
| Dan Morris | 1/2/08 |
| Terry Ruby | 2/19/08 |
| Marti Scott | 2/6/08 |
| Jhuvette Seals | 3/3/08 |
| William Seeley | 2/6/08 |
| Connie Stinnett | 2/26/08 |
| Judy Taylor | 1/10/08 |
| Sandra Turner | 4/1/08 |
| Dennis Vincent | 12/28/07 |
| Gary Whitmire | 1/18/08 |
| Anne Wilson | 2/25/08 |

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | File No. EB-07-TC-13259 |
| | ) | |
| Clean Credit, Inc. | ) | NAL/Acct. Nos. 200832170077 and |
| | ) | 20093217009 |
| | ) | FRN: 0018140178 |

**FORFEITURE ORDER**

**Adopted: September 16, 2010**                 **Released: September 28, 2010**

By the Commission:

## I.   INTRODUCTION

1.       In this *Forfeiture Order* ("Order"), we issue a monetary forfeiture in the amount of $139,500 against Clean Credit, Inc. ("Clean Credit") for willful and repeated violations of section 227 of the Communications Act of 1934, as amended ("Act"),[1] and the Commission's related rules and orders,[2] by delivering at least 31 unsolicited advertisements, or "junk faxes," to the telephone facsimile machines of at least 29 consumers.

## II.   BACKGROUND

2.       This Forfeiture Order arises from two distinct Notices of Apparent Liability for Forfeiture[3] that were issued against Clean Credit. The facts and circumstances surrounding these cases are set forth in the *NALs* and need not be reiterated at length.

3.       The Telephone Consumer Protection Act of 1991 (TCPA) was enacted by Congress to address problems of abusive telemarketing, in particular junk faxes.[4] As Congress recognized, unsolicited faxes often impose unwanted burdens on the called party, including costs of paper and ink, and making fax machines unavailable for legitimate business messages.[5] Section 227(b)(1)(C) of the Act makes it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send,

---

[1] 47 U.S.C. § 227.

[2] *See also* 47 U.S.C. § 503(b)(1).

[3] *Clean Credit, Inc.* Notice of Apparent Liability for Forfeiture, 23 FCC Rcd 13866 (Enf. Bur.2008) ("*NAL 1*"); *Clean Credit, Inc,* Notice of Apparent Liability for Forfeiture, 23 FCC Rcd 18506 (2008) ( "*NAL 2*") (collectively "*NALs*").

[4] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394, *codified at* 47 U.S.C. § 227. *See also* Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, 119 Stat. 359 (2005).

[5] *See, e.g.,* S. Rep. No. 1462, 102d Cong., 1st Sess. 2 (1991); H. Rep. No. 102-317, 102d Congress, 1st Sess. 10 (1991).



13801

to a telephone facsimile machine, an unsolicited advertisement" unless the sender has an established business relationship with the recipient.[6]

     4.     As the *NALs* discuss, the Enforcement Bureau issued a junk fax citation[7] to Clean Credit on August 29, 2007, in response to one or more consumer complaints alleging that Clean Credit had faxed unsolicited advertisements. Clean Credit did not respond to this citation. Subsequently, the Commission received numerous additional complaints from consumers alleging that Clean Credit had faxed unsolicited advertisements to them. These violations, which occurred after the Bureau's citation, resulted in the issuance of two Notices of Apparent Liability for Forfeiture against Clean Credit: on September 26, 2008, in the amount of $13,500, and on December 19, 2008, in the amount of $126,000.[8] In total, the *NALs* cited Clean Credit for sending 31 unlawful, unsolicited fax advertisements to 29 consumers. The *NALs* ordered Clean Credit either to pay the proposed forfeiture amounts within thirty (30) days or to submit evidence or arguments to show that no forfeitures should be imposed or that some lesser amounts should be assessed.

## III.    DISCUSSION

     5.     As with the citation, Clean Credit did not respond to the *NALs*. Accordingly, we affirm our findings that Clean Credit violated the Act and our rules on 31 separate occasions. Since we have no evidence to suggest that the proposed forfeiture should be reduced or cancelled, we hereby impose a total forfeiture of $139,500 for Clean Credit's willful or repeated violation of section 227 of the Act and the Commission's related rules and orders, as set forth in the *NALs*.

## IV.    ORDERING CLAUSES

     6.     Accordingly, IT IS ORDERED, pursuant to section 503(b) of the Communications Act of 1934, as amended, 47 U.S.C. § 503(b), and section 1.80(f)(4) of the Commission's rules, 47 C.F.R. § 1.80(f)(4), that Clean Credit, Inc. IS LIABLE FOR A MONETARY FORFEITURE to the United States Government in the sum of $139,500 for willfully and repeatedly violating section 227(b)(1)(c) of the Communications Act, 47 U.S.C. § 227(b)(1)(c), section 64.1200(a)(3) of the Commission's rules, 47 C.F.R. § 64.1200(a)(3), and the related orders as described in the paragraphs above.

     7.     Payment of the forfeiture shall be made in the manner provided for in section 1.80 of the Commission's rules within thirty (30) days of the release of this Order. If the forfeiture is not paid within the period specified, the case may be referred to the Department of Justice for collection pursuant to section 504(a) of the Act.[9] Payment of the forfeiture must be made by check or similar instrument, payable to the order of the Federal Communications Commission. The payment must include the NAL/Account Number and FRN Number referenced above. Payment by check or money order may be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000. Payment by overnight mail may be sent to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101. Payment by wire transfer may be made to ABA Number 021030004, receiving bank TREAS/NYC, and account number 27000001. For payment by credit card, an FCC Form 159 (Remittance Advice) must be submitted. When completing the FCC Form 159, enter the NAL/Account number in block number 23A (call sign/other ID), and enter the letters "FORF" in

---

[6] 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a)(3).

[7] Citation from Kurt A. Schroeder, Deputy Chief, Telecommunications Consumers Division, Enforcement Bureau, File No. EB-07-TC-13259, issued to Clean Credit on August 29, 2007. For further details, *see NAL 2*,23 FCC Rcd at 18507, para. 3.

[8] *See* n.3, *supra; see also* 47 U.S.C. § 503(b)(1).

[9] 47 U.S.C. § 504(a).

**Federal Communications Commission**                                      **FCC 10-165**

block number 24A (payment type code). Clean Credit, Inc. will also send electronic notification on the date said payment is made to Johnny.Drake@fcc.gov. Requests for full payment under an installment plan should be sent to: Chief Financial Officer -- Financial Operations, 445 12th Street, S.W., Room 1-A625, Washington, D.C. 20554. Please contact the Financial Operations Group Help Desk at 1-877-480-3201 or Email: ARINQUIRIES@fcc.gov with any questions regarding payment procedures.

8.      IT IS FURTHER ORDERED that a copy of the Forfeiture Order shall be sent by First Class Mail and Certified Mail Return Receipt Requested to Clean Credit, Inc., Attn: Christopher Parks, 5332 S. Memorial Drive, #100, Tulsa, OK 74145.


FEDERAL COMMUNICATIONS COMMISSION



Marlene H. Dortch
Secretary



# FEDERAL COMMUNICATIONS COMMISSION
## OFFICE OF GENERAL COUNSEL

September 16, 2011

Mr. Christopher Parks
5332 S Memorial Drive
Suite 100
Tulsa, OK 74145

NAL Nos. 200832170077 and
20093217009

Dear Mr. Parks:

On September 26, 2008, the Enforcement Bureau, Federal Communications Commission, issued a Notice of Apparent Liability For Forfeiture against Clean Credit, Inc. in the amount of $13,500.00 for willfully and repeatedly violating Section 227 of the Communications Act, 47 U.S.C. § 227, and the Commission's related rules and orders, by delivering at least three unsolicited advertisement to the telephone facsimile machine of at least three consumers.  On December 19, 2008, the Commission issued a second Notice of Apparent Liability For Forfeiture against Clean Credit, Inc. in the amount of $126,000.00 for willfully and repeatedly violating Section 227 of the Communications Act, 47 U.S.C. § 227, by delivering at least twenty-eight unsolicited advertisements to the telephone facsimile machines of at least twenty-six consumers. On September 28, 2010, the Commission issued a Forfeiture Order affirming the forfeiture amount of $139,500.00 in the September 26, 2008 and December 19, 2008 Notices of Apparent Liability For Forfeiture.  This is to inform you that if the forfeiture is not paid within 30 days of the date of this letter, the matter will be referred to the Department of Justice for enforcement.



PLAINTIFF'S EXHIBIT
E

2

Payment may be made by check payable to the Federal Communications Commission. Please write on the check the NAL number noted above and mail your check along with a copy of this letter to:

Federal Communications Commission
Revenue & Receivables Operations Group
P.O. Box 979088
St. Louis, MO 63197

Thank you.

Sincerely,

Susan L. Launer
Deputy Associate General Counsel

# FEDERAL COMMUNICATIONS COMMISSION
## WASHINGTON, D.C.

## CERTIFICATE OF FORFEITURE

**Violator(s) Name(s) and
Address(es):**

Clean Credit, Inc.
5332 S. Memorial Drive, Suite 100
Tulsa, OK 74145

**Total forfeiture assessed by FCC as of** September 16, 2011 **in the amount of** $139,500.00.
I certify that Federal Communications Commission records show that the violator named above
has been ordered to pay to the United States the amount stated above.

This claim arose in connection with:

    Notice of Apparent Liability For Forfeiture released September 26, 2008
    Notice of Apparent Liability For Forfeiture released December 19, 2008
    Forfeiture Order released September 28, 2010

**CERTIFICATION:** Pursuant to 28 USC § 1746, I certify under penalty of perjury that the
foregoing is true and correct.

_11/16/2011_
(Date)

Susan L. Launer
Deputy Associate General Counsel



**PLAINTIFF'S
EXHIBIT**

F